Lauren C. Regan, OSB # 970878
Email: lregan@cldc.org
Marianne Dugan, OSB # 932563
Email:  mdugan@cldc.org
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St. Suite 301 #359
Eugene, OR  97401
Telephone:  541.687.9180

     Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HASHEEM BOUDJERADA; DAMON COCHRAN-SALINAS; ERIN GRADY; TYLER HENDRY; and KIRTIS RANESBOTTOM, | Case No. 6:20-cv-1265-MK |
| Plaintiffs, | PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS |
| v. | ORAL ARGUMENT REQUESTED |
| CITY OF EUGENE; SARAH MEDARY; WILLIAM SOLESBEE; SAMUEL STOTTS; BO RANKIN; TRAVIS PALKI; MICHAEL CASEY; RYAN UNDERWOOD; CRAIG WRIGHT; CHARLES SALSBURY; and CHIEF CHRIS SKINNER, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs Boudjerada, Grady, and Hendry respectfully object to pages 21-24 of Judge

Kasubhai's Findings and Recommendation (ECF No. 137), recommending that the Motion for

Summary Judgment of Defendants Underwood, Casey, Palki, Stotts, and Rankin ("the Curfew

Defendants") should be granted. Plaintiffs Cochran-Salinas and Ranesbottom respectfully object

to pages 24-29 of the F&R, recommending that the Motion for Summary Judgment of

Page 1 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

Defendants Solesbee and Wright ("the Campbell Club Defendants") should be granted. All
Plaintiffs respectfully object to pages 29-30 of the F&R, recommending that the Motion for
Summary Judgment of Defendant Salsbury should be granted.

Regarding the Curfew Defendants, specifically, Plaintiffs object to Judge Kasubhai's
conclusion that the Defendants are entitled to qualified immunity. Further, summary judgment is
inappropriate here because there are sufficient material facts that a reasonable jury could find the
arrests were illegal violations of the Fourth Amendment.

Regarding Defendant Solesbee, specifically, Plaintiffs object to the conclusion that he has
qualified immunity for injuring Cochran-Salinas and the Campbell Club property while shooting
"less-lethal" 40mm rounds at their houseguest as he ran into the house. Regarding Defendant
Wright, specifically, Plaintiffs object to the conclusion that he has qualified immunity for
injuring Cochran-Salinas and the Campbell Club property while shooting pepperballs outside of
the house. As discussed herein, a 2019 Ninth Circuit case clearly established the law in a similar
situation. In addition, material issues of disputed fact require that these issues be taken to the
fact-finder, regarding whether the Campbell Club Defendants in fact knew and intended that
their projectiles were aimed at the windows and doors of the house, and/or at Plaintiff Cochran-
Salinas.

Finally, there are disputed issues of material fact regarding the supervisory liability of
Defendant Salsbury.

**LEGAL STANDARD**

As Judge Kasubhai acknowledged, summary judgment is appropriate only if the
pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show

Page 2 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

"that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving parties (here, the Defendants) have the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On summary judgment, (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party (here, the Plaintiffs). *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Qualified immunity is an affirmative defense that the Defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923 (1980); *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S. Ct. 2727, 2736 (1982). Although the Plaintiff has the burden of showing that the law was clearly established, once they do so, "the burden shifts to the Defendant[s] to show that a reasonable police officer could have believed, in light of the settled law, that he was not violating a constitutional right" by arresting the Plaintiffs. *See Gasho v. United States*, 39 F.3d 1420, 1438 n. 6 (9th Cir. 1994), *cert. denied sub. nom. Ball v. Gasho*, 515 U.S. 1144, 115 S. Ct. 2582 (1995). Under this "objective reasonableness" test, *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994), the officers' subjective intent or beliefs are essentially irrelevant; the proper inquiry is whether in light of the facts and circumstances confronting the officers, it was objectively reasonable to conclude that the arrest was supported by probable cause. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034 (1987); *Mendoza*, 27 F.3d at 1362.

The inquiry as to whether officers are entitled to qualified immunity for arrest without

Page 3 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

probable cause is the same as inquiry on the merits of the unlawful arrest claim. *Katz v. U.S.*, 194 F.3d 962, 968 (9th Cir. 1999).

A case *directly* on point is not required for the law to be clearly established. *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013). Importantly, though, "it is not necessary that the alleged acts have been previously held unconstitutional" in order to determine that a right was clearly established, "as long as the unlawfulness [of Defendant's actions] was apparent in light of pre-existing law." *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977 (9th Cir. 2005) (alterations in original) (internal quotation marks omitted). In some circumstances, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *United States v. Lanier*, 520 U.S. 259, 271, 117 S. Ct. 1219 (1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987) ).

These parameters counsel that officials may "still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508 (2002). The court is "particularly mindful of this principle in the Fourth Amendment context, where the constitutional standard – reasonableness – is inevitably a fact-intensive inquiry. After all, if qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their reasonable violations of the Fourth Amendment." *Bonivert v. City of Clarkson*, 883 F.3d 865, 872-73 (9th Cir. 2018) (internal quotation marks and brackets omitted).

I.    **CASE LAW CLEARLY ESTABLISHES THAT SERGEANT STOTTS AND THE OTHER ARRESTING OFFICER DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR IMPLEMENTING THE UNCONSTITUTIONAL ORDER**

Qualified immunity is a judicial creation, dating to 1967, when the Supreme Court first made a "good faith" defense available to individual § 1983 defendants, writing that Congress had not "meant to abolish wholesale all common-law immunities." *Pierson v. Ray*, 386 U.S. 547, 554 (1967).[1]

Defendants are not entitled to qualified immunity when the right violated "was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009).

This Court has already held that it was clearly established that the City-Wide curfew was unconstitutional, based on the 27-year old case *Collins v. Jordan*, 110 F.3d 1363 (9th Cir. 1996). Dkt 187, 189, *Boudjerada v. City of Eugene*, No. 6:20-CV-01265-MK, 2023 WL 3903751 (D.

---

[1] Challenges to the concept of qualified immunity are pending at the Supreme Court, and Plaintiffs therefore preserve the right to challenge the validity of that defense if it is eventually overturned. "[S]trange-bedfellows alliance of leading scholars and advocacy groups of every ideological stripe -- perhaps the most diverse amici ever assembled -- ha[ve] joined forces" along with "a growing, cross-ideological chorus of jurists and scholars urging recalibration of contemporary immunity jurisprudence." *Zadeh v. Robinson*, 928 F.3d 457, 480 (5th Cir. 2019) (Willett, J., concurring in part and dissenting in part). In the Ninth Circuit, Judge Hurwitz has noted how courts "struggle" to apply the "ill conceived" and "judge made doctrine of qualified immunity, which is found nowhere in the text of § 1983." *Sampson v. Cnty. of Los Angele*s, 974 F.3d 1012, 1025 (9th Cir. 2020) (Hurwitz, J., concurring in part and dissenting in part). Supreme Court justices from different ideological wings have urged reform of the qualified-immunity doctrine. *Kisela v. Hughes*, 138 S. Ct. 1148, 1162 (2018) (Sotomayor, J., dissenting); *Ziglar v. Abassi*, 582 U.S. 120, 160 (2017) (Thomas, J., concurring in part and concurring in the judgment) ("In an appropriate case, we should reconsider our qualified immunity jurisprudence.").

Or. May 24, 2023), report and recommendation adopted, 2023 WL 3886114 (D. Or. June 8, 2023); *see* Dkt 192 at 18.[2] Therefore, that is the law of the case. As Judge Kasubhai noted in the second F&R (Dkt 192) at 18:

> It has been clearly established since at least 1996 that "the occurrence of limited violence and disorder on one day is not a justification for banning all demonstrations, peaceful and otherwise, on the immediately following day (or for an indefinite period thereafter)." *Collins v. Jordan*, 110 F.3d 1363, 1372 (9th Cir. 1996). In fact, *Collins* -- which itself was a qualified immunity case -- held that rule was already clearly established when it was decided in 1996, citing cases from the 1960s and 1970s. *Id*. at 1372-73. As explained in this Court's prior opinion finding the City-Wide Curfew unconstitutional, the facts in *Collins* are substantially similar to those present here. Both cases involve city-wide restrictions on free speech in the wake of largely peaceful demonstrations in prior days which nevertheless had a limited and localized number of violent incidents which the city sought to curtail. See *id*. at 1372. Based on *Collins* and the cases cited therein, it was clearly established at the time of the City-Wide Curfew here that such a curfew violated protestors' First Amendment rights such that a reasonable person imposing that curfew would know that it was unconstitutional.
>
> Accordingly, Defendants Medary and Chief Skinner should not be entitled to qualified immunity.

Judge Kasubhai therefore, in the second F&R, recommended that neither the City Manager nor the Chief of Police is entitled to qualified immunity, for *issuing* the City-Wide Curfew Order. Dkt 192 at 18. However, Judge Kasubhai went on to wrongly distinguish *Collins* from the claims against the "Curfew Defendants" in the instant case, for *implementing* and *enforcing* the illegal Curfew Order. *Id*. at 21-24. Judge Kasubhai's reasoning was that *Collins* pertains "to the decision to restrict free speech (*i.e.*, First Amendment freedom of speech claims),

---

[2] For whatever reason, Defendants chose not to file objections to the earlier F&R which found and recommended that the curfew was unconstitutional, which F&R was adopted by the Article III judge.

Page 6 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

not officers relying on an allegedly unconstitutional restriction to arrest individuals in violation of it." *Id.* at 22.

However, in *Collins* the Ninth Circuit *did* address officers' reliance on an unconstitutional restriction to make arrests. *Collins* was not solely a First Amendment case. *Collins* arose out of the protests in response to the police assault of Rodney King. In *Collins*, arrestees from a city-wide order banning "gatherings" brought an action for violations of *both* their First and Fourth Amendment rights against the Mayor of San Francisco, the police chief, and a number of higher rank officers who oversaw the arrests. 110 F.3d at 1368-69. The Defendant officers appealed from the district court's denial of qualified immunity. *Id.* at 1369. The Ninth Circuit affirmed the denial of the police chief's qualified immunity, because the law was "clearly established that, given the events of the previous day, an order to ban all demonstrations *and arrest all demonstrators* would be unconstitutional." *Id.* at 1371 (emphasis added). However, the appeal also involved three higher ranking police officers who oversaw and ordered the arrests, and the court rejectged their qualified immunity appeals as well, because genuine disputes of fact existed as to the probable cause behind the arrests. *Id.* at 1377. The *Collins* case did not rely solely on the First Amendment, but also addressed the constitutionality of the *arrests* – under the Fourth Amendment – and held that material issues of disputed fact precluded qualified immunity.

The same is true in the instant case – this Court has already held that there are genuine issues of material fact regarding probable cause for each arrest. Dkt 187 at 26-27. Because it is the law of the case that there are material issues of fact on that question, the question of whether it was reasonable for the officers to rely on the illegal curfew order is a question for the

Page 7 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

factfinder, not for the Court as an issue of law. As the Supreme Court explained in *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014):

> [U]nder either prong [of the qualified immunity analysis], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *See Brosseau v. Haugen*, 543 U.S. 194, 195, n. 2, 125 S. Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam); *Saucier*, supra, at 201; *Hope*, supra, at 733, n. 1. This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'. . . Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard. In cases alleging unreasonable searches or seizures, we have instructed that courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case.'. . . Accordingly, courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions.

The Ninth Circuit's opinion in *Collins* may not have explicitly included the individual officers who ordered or made arrests, but that distinction is not necessary to place the constitutional question beyond debate: a prophylactic city-wide ban on protests is unconstitutional; therefore no reasonable officer could believe that arresting people for violating such a ban is constitutional. The test in *Collins* to determine whether the chief was entitled to qualified immunity did not distinguish between higher-ranking and lower-ranking officers. 110 F.3d at 1370. Rather, the test is an objective one, querying whether "*a reasonable officer* would have known that a decision to *prevent all demonstrations* based on the events of the preceding day would violate the constitutional rights of those desiring to engage in peaceful protests." *Id*. (emphasis added). Here, the decision to grant qualified immunity to the Sergeant who ordered the arrests, and those who carried them out, while holding that it was clearly established that the arrestable offense was unconstitutional, makes no sense.

Even if the Court rejects the equal application of the qualified immunity analysis in

Page 8 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

*Collins* to officers of all ranks, Sergeant Stotts' qualified immunity should be denied just as the

officers who oversaw the arrests in *Collins* were denied qualified immunity. This amounts to a

"just following orders" defense, which the courts have rejected in the qualified immunity

context. *See O'Rourke v. Hayes*, 378 F.3d 1201, 1210 (11th Cir. 2004) (rejecting a "just

following orders" defense). As the court noted in *Blake v. California Dep't of Correction*, No.

CV 19-9239-DDP(E), 2022 WL 20356985 (C.D. Cal. Mar. 31, 2022):

> "[I]ndividuals cannot always be held immune for the results of their official
> conduct simply because they were enforcing policies or orders promulgated by those with
> superior authority." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir.
> 1994); *see also Baude v. Leyshock*, 23 F.4th 1065 (8th Cir. 2022) ("Subordinate police
> officers cannot escape liability when they blindly follow orders."); *Kennedy v. City of
> Cincinnati*, 595 F.3d 327, 337 (6th Cir.), cert. denied, 562 U.S. 832 (2010) ("[P]ublic
> officials have an obligation to follow the Constitution even in the midst of a contrary
> directive from a superior or in a policy.") (citations, quotations and brackets
> omitted)); *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004) ("since World
> War II, the 'just following orders' defense has not occupied a respected position in our
> jurisprudence, and officers in such cases may be held liable under § 1983 if there is a
> reason why any of them should question the validity of that order") (citation and
> quotations omitted); *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999) (in civil
> rights case, "[r]eliance on a superior's orders does not in itself dissipate all liability")
> (citations omitted); *Adams v. Davis*, 2022 WL 263287, at *8 n.2 (E.D. Tex. Jan. 6,
> 2022), adopted, 2022 WL 256493 (E.D. Tex. Jan. 26, 2022) ("The 'I was only following
> orders' defense is not a viable defense to a deliberate indifference claim. Correctional
> officers are expected to know and follow constitutional standards regarding the safety and
> health of inmates."). The Court rejects Barbour's argument that, as a matter of law, he
> cannot be held liable for unconstitutional deliberate indifference if he was following his
> supervisor's order(s). *See id*.

*See also Dirks v. Grasso*, 449 Fed. App'x 589, 591–92 (9th Cir. 2011) ("[Defendants] cite no

binding authority holding that following a superior's orders entitles officers to qualified

immunity, and none exists"); *Akhtar v. Mesa*, 2013 WL 1785893, at *7 (E.D. Cal. Apr. 25,

2013), adopted, 2013 WL 2474693 (E.D. Cal. June 7, 2013) (recommending denial of motion to

Page 9 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

dismiss on qualified immunity grounds; rejecting argument that Defendants

were just following orders).

> In *Grossman*, the Ninth Circuit noted:

> [A]s historical events such as the Holocaust and the My Lai massacre demonstrate, individuals cannot always be held immune for the results of their official conduct simply because they were enforcing policies or orders promulgated by those with superior authority. Where a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity.

33 F.3d at 1209.

> As with City Manager and Chief Skinner, the "Curfew Defendants" are public officials

presumed to know the law governing their conduct. The Ninth Circuit considers police officers,

regardless of their rank, as public officials. *Chew v. Gates*, 27 F.3d 1432, 1439 (9th Cir. 1994).

Police officers are imputed with a presumption of the case law concerning the constitutionality of

their conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). As noted in the Findings &

Recommendation (Dkt 192 at 17), the legal test for qualified immunity is not whether the public

official was party to the rationalization of the unconstitutional measure, but whether the then-

existing precedent was "clear enough that every reasonable official would interpret it to establish

the particular rule the Plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U.S. 48, 63

(2018) (citations omitted). In other words, if the unconstitutionality of the City-Wide Curfew

precludes qualified immunity for Medary and Skinner, then it also must do so for "every

reasonable" additional public official enforcing it, including police officers Underwood, Casey,

Palki, Stotts, and Rankin.

> The unconstitutional rationale underlying the curfew was not hidden in some private

emails or phone calls that Sergeant Stotts and the arresting officer Defendants were unaware of.

To the contrary, the City-Wide Curfew's stated reason -- "to preserve the safety of the public and

prevent the reoccurrence of the violence and destruction" -- was written into the *publicly*

announced administrative order itself. A reasonable officer should have been aware that the

rationale underlying the order was unconstitutional, under Ninth Circuit case law clearly

established 27 years ago in the *Collins* case.

        In the alternative, even if the Defendant officers were not privy to the rationale

underlying the City-Wide Curfew order, they were on notice of the third prong of the

constitutionality test for a regulation on speech: that it must "leave open ample alternative

channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781,

791 (1989). In the "time, place, and manner" test elaborated under that case, a regulation on

speech is constitutional only if it meets all three prongs. Failing to satisfy any one of the prongs

makes the order unconstitutional. Here, no one knew better than the officers enforcing the curfew

on the street that there were no "ample alternative channels for communication" left open, as

they were the ones clearing the streets by means of force, arrest, and less-lethal projectiles.

        Judge Kasubhai incorrectly (in a footnote) states that Plaintiff Hendry was charged with

disorderly conduct as well as the curfew violation. Dkt 192 at 22 n. 4. That is incorrect. Like the

other arrested Plaintiffs, Hendry was charged only with curfew violation. *See* Dkt 138-7 at 1.

Defendants *did* argue that Hendry *could have* been charged with disorderly conduct (Dkt 137 at

5 and 8), which Plaintiffs addressed in their summary judgment briefing, noting that there were

material issues of fact on that point. *See* Dkt 165 at 16-17 (incorporated by reference into their

response to summary judgment, Dkt 167 at 1).

Page 11 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

Although qualified immunity analysis is generally a two-step process, here, on the arrest claims, Judge Kasubhai found that the right was not clearly established, and therefore did not proceed to the other step – whether a reasonable officer would know there was not probable cause to arrest. Dkt 192 at 21. However, this Court has already determined that there are disputed issues of material fact on that issue, and therefore, if the right was clearly established, the probable cause issue must go to the factfinder. Dkt 187 at 22-27 (adopted in Dkt 189).

## II.    DEFENDANTS SOLESBEE AND WRIGHT ARE NOT ENTITLED TO SUMMARY JUDGMENT REGARDING THEIR ASSAULT ON THE CAMPBELL CLUB AND ITS RESIDENTS

As Judge Kasubhai recognized, the "Campbell Club Plaintiffs" bring two separate claims for the injuries they and their home sustained when Defendants Solesbee and Wright shot their so-called "less-lethal" weapons towards the Plaitniffs and their home – one for excessive force (under the Fourth Amendment) and one for deliberate indifference. As Judge Kasubhai acknowledged, these require separate analyses.

Judge Kasubhai found that Plaintiffs Cochran-Salinas and Ranesbottom had an ownership interest in their residence, the Campbell Club. Dkt 192 at 25 ("There is evidence that by virtue of the co-operative ownership agreement they entered into, they were part-owners of the Campbell Club which was damaged by less-lethal munitions.").

The F&R also concludes that the Campbell Club Plaintiffs presented sufficient evidence that the Campbell Club was hit and damaged by less-lethal weapons; that the Defendants broke the windows, allowing tear gas to seep in and cause injury to Plaintiff Cochran-Salinas; that the residents could not go outside the home for fear of being hit by projectiles; and that the Campbell Club Plaintiffs therefore have standing to sue. Dkt 192 at 5, 25 ("The Court finds that there is

Page 12 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

sufficient evidence in the record to establish that the Campbell Club Plaintiffs were "injured" for Article III purposes and therefore have standing"; "There is also additional evidence of injury to Cochran-Salinas based on the entry of tear gas into the home and irritation to his eyes as a result.").

However, Judge Kasubhai then erred by granting Defendants Solesbee and Wright qualified immunity, based on the theory that it was not clearly established in May 2020 that injuring a bystander was actionable. Dkt 192 at 29. This is wrong for two reasons.

First, as discussed *infra*, it was clearly established as of August of 2019, that, in this type of situation, bystanders injured by police projectiles can sue for deliberate indifference. *Nicholson v. City of Los Angeles*, 935 F.3d 685 (9th Cir. 2019). Unfortunately, Judge Kasubhai mistakenly understood *Nicholson* to have been issued after the date of the events addressed in this lawsuit (Dkt 192 at 29), but it was in fact issued nearly a year prior, thereby clearly establishing the law for purposes of this case. Second, there are material issues of fact regarding the actual intentions of the officers, as to who they were aiming their projectiles at.

An officer does not need to intend to hit a target to show deliberate indifference. *Nicholson*, 935 F.3d at 693. In *Nicholson*, the victim was not the person the officer perceived as being involved in criminal behavior, nor was he a part of a targeted group. *Id*. at 689. The police officer in that case saw what he thought was a person in an alleyway holding a gun, and so he rushed into the alleyway firing his gun at the group of people he had seen. *Id*. The plaintiff in that case was standing a foot away from the officer's target, and was hit by a bullet. *Id*. The officer had not meant to shoot him; he was merely an innocent bystander. *Id*. at 693. The court in that case determined that the use of deadly force harming an innocent bystander is

Page 13 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

unconstitutional under the Fourteenth Amendment, as deliberate indifference, and that the officer

violated the Plaintiffs due process rights. *Id*. However, the Ninth Circuit granted qualified

immunity, *for purposes of that case*, holding that the right was not clearly established until that

ruling.

      *Nicholson* clearly established, nearly a year before the events that are the subject of this

lawsuit, that an innocent bystander can have their substantive due process rights violated by an

officer's deliberate indifference. *Id*. Unfortunately, Judge Kasubhai mistakenly understood

*Nicholson* to have been issued after the date of the events addressed in this lawsuit (Dkt 192 at

29), but it was in fact issued nearly a year prior, thereby clearly establishing the law for purposes

of this case. In *Brizuela v. City of Sparks*, the Ninth Circuit recognized that *Nicholson* had clearly

established that an officer's deliberate indifference in harming a bystander in a shooting is a

constitutional violation under the Fourteenth Amendment. *Brizuela v. City of Sparks*, No. 22-

16357, 2023 WL 5348815, 2 (9th Cir. Aug. 21, 2023). The court did uphold qualified immunity

in that case, but that was because the events in the *Brizuela* case occurred before *Nicholson* was

decided. *Id*.[3]

      Under the Fourteenth Amendment, deliberate indifference is actionable when an officer

disregards a known or obvious consequence of his action. *Nicholson*, 935 F.3d at 692-93.

Shooting pepperball projectiles at the doorway of an occupied home raises the obvious

---

[3] In discussing *Nicholson, Brizuela* contains an odd referene to the rights of the "family," stating:
"[W]e concluded in *Nicholson* that an officer's deliberate indifference in a shooting could violate
a family's substantive due process rights under the Fourteenth Amendment." *Nicholson* makes no
mention of a "family's" rights, so this *dicta* does not change the fact that *Nicholson* clearly
established the rights of bystanders as of 2019.

Page 14 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

consequence of harm to the people inside. The Ninth Circuit has previously held that "[a]n officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury." *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001) (quoting *Mendoza*, 27 F.3d at 1362). In *Deorle*, the officer fired a lead-filled bean bag round at the Plaintiff. The method used to inflict injury was "less lethal," but the court still denied qualified immunity. Qualified immunity has similarly been rejected in other cases where officers used pepperballs or other so-called "less lethal" force. *See, e.g., Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) (rejection of qualified immunity when pepperball projectiles were shot at partygoers); *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125 (9th Cir. 2002) (rejection of qualified immunity for pepper spray used on nonviolent protestors). The use of so-called "less lethal" force – as opposed to the lethal force used in *Nicholson* -- does not preclude Plaintiffs' Fourteenth Amendment rights from being clearly established.

*Nicholson* clearly established, in 2019 (the year before the events at issue here) that an officer who harms a bystander when shooting a gun towards a group of people incurs liability for deliberate indifference. *Nelson* is factually on point, but Judge Kasubhai distinguished because in his view that case involved an officer with no particular target, just shooting at a group of people. Arguably, the same is true here, and that is an alternative reason to deny summary judgment, as explained in more detail *infra*.

Even if *Nicholson* were insufficient factual precedent showing that so-called "less lethal" force harming a bystander is a Fourteenth Amendment violation, there does not have to be such a case on all fours. When the legal ramifications are sufficiently clear, "no particularized case law is necessary" for a police officer to know that what they are doing is unconstitutional. *Mendoza*,

Page 15 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

27 F.3d at 1362. Qualified immunity does not provide such broad protection requiring that "the

very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S.

635, 640 (1987).

It has become increasingly clear that so-called "less-lethal" weapons can inflict

mutilating or even lethal harm to protesters. *See* https://phr.org/our-work/resources/crowd-

control-weapons-and-social-protest-in-the-united-states/; https://phr.org/our-

work/resources/lethal-in-disguise/ (Physicians for Human Rights). In *Nelson*, more than ten years

ago, the Ninth Circuit court recognized that even the small pepperball projectiles, which are by

definition much less impactful than a 40mm round, are a significant use of force. 685 F.3d at

878. More than twenty years ago, the Ninth Circuit recognized that the use of pepper spray alone

can constitute excessive force. *See Headwaters Forest Defense v. Cnty. of Humboldt*, 276 F.3d

1125, 1129-30 (9th Cir. 2002). *See also Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1086

(9th Cir. 2013). Even in the case of a barricaded dangerous suspect, the action of a police officer

sending tear gas into a home has been deemed potentially excessive force, precluding summary

judgment. *Howell v. Municipality of Anchorage*, No. 3:20-CV-00301-SLG, 2022 WL 17736788

(D. Alaska Dec. 16, 2022). In that case, the court denied qualified immunity, holding that it is

"clearly established . . . that 'where no immediate threat to the safety of others exists, law

enforcement officers are required to consider less intrusive tactics' before using 'aggressive

tactics to subdue a mentally unstable individual who is resisting arrest.'" *Id*. at *16 (Collecting

cases). *See also Anti Police-Terror Project v. City of Oakland*, No. 20-CV-03866-JCS, 2021 WL

4846958 (N.D. Cal. Oct. 18, 2021) (discussing known dangers of tear gas and case law).

In the instant case, the officers' actions show deliberate indifference to the welfare of

those that were in the officers' line of sight, as well as those that could presumably be harmed within the house. They not only broke windows and window casing (allowing tear gas to enter the house), and knocked the door off its hinge; Solesbee shot directly at Plaintiff Cochran-Salinas' head. Pre-existing law (*Nicholson*) clearly established that shooting a bystander raises deliberate indifference liability, and it should have been apparent to the officers that their actions were unlawful.

Even if *Nicholson* did not clearly establish potential liability for so-called "bystander" impacts, there are material issues of fact regarding officer Solesbee's intentions. A reasonable jury could find that Solesbee shot directly oat Plaintiff Cochran-Salinas and at the Campbell Club. Cochran-Salinas testified that he had the door open to allow the house guest to enter when Solesbee fired and that he (Cochran-Salinas) saw the 40mm round heading straight at his head. Dkt 192 at 4; Dkt 170 ¶ 19. At least one round hit the door hinge, knocking the front door off the hinge. Dkt 192 at 4; Dkt 170 ¶ 19. Given those facts (which must be taken as true at this stage), a reasonable jury could find that Solesbee was in fact targeting *both* the house guest, *and* Cochran-Salinas, *and/or* the house itself.

The Findings and Recommendations regarding Defendant Wright should also be rejected because they do not address the separate injury to the Campbell Club and to Plaintiff Cochran-Salinas from the pepperballs breaking windows and allowing tear gas to seep in. There are disputed issues of material fact as to how that occurred, because Officer Wright stated in his police report that he was only aiming at the feet of the person trying to enter the home, leading to questions of credibility and causation. Dkt 136 at 2.

A reasonable jury could find that Solesbee and Wright knowingly made the Campbell

Club Plaintiffs fearful of the 40mm rounds, pepperballs, and tear gas by deploying them towards the windows and door of the house, and at the resident standing in the open door of the house, reasonably making them fearful of going outside onto their porch.

The Campbell Club Plaintiffs are entitled to have a jury weigh the credibility of Defendants Solesbee and Wright, looking at the totality of the circumstances.

## III.    THERE ARE MATERIAL ISSUES OF FACT REGARDING THE LIABILITY OF DEFENDANT SALSBURY AS A SUPERVISOR OF THE ARRESTS AND USE OF FORCE

Judge Kasubhai noted that Lieutenant Salsbury "was responsible for controlling the resources, equipment, and deployment." Dkt 192 at 5. Salsbury also "commanded officers to give dispersal orders and make arrests for failure to comply "if it appeared that those lawful orders were not being followed." *Id*. at 5.[4] Judge Kasubhai recommends dismissing Defendant Salsbury, however, on the grounds that, "because the Court has already concluded that none of the individuals Lieutenant Salsbury supervised deprived Plaintiffs of their constitutional rights, his motion for summary judgment against Plaintiffs' Fourth and Fifth Claims for relief as they pertain to Lieutenant Salsbury specifically should be granted." Dkt 192 at 30.

"[S]upervisors may be [individually] liable for the constitutional violations of their subordinates 'when culpable action, or inaction, is directly attributed to them." *NAACP of San Jose/Silicon Valley v. City of San Jose*, --- F.Supp.3d ----, 2021 WL 4355339, at *8 (N.D. Cal.

---

[4] Although the legal analysis in the F&R regarding Defendant Salsbury focuses on the Campbell Club claims and does not address the arrest claims directly, those were clearly raised in the complaint and the summary judgment response. *See* Dkt 8 ¶¶ 77, 151, 153, 155; Dkt 133-6; Dkt 169 at 12-13.

Sep. 24, 2021) (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011), *cert. denied* (2012)). This is true "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr*, 652 F.3d at 1205. It is unnecessary for the supervisor to be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Id.* at 1205-06.

> In *Starr*, the Ninth Circuit noted:

> We have long permitted plaintiffs to hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributed to them. We have never required a plaintiff seeking to state a claim for supervisory liability to allege that a supervisor was physically present when the injury occurred. In *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), we explained that to be held liable, the supervisor need not be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Id*. at 645. Rather, the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 646 (internal citations, quotation marks, and alterations omitted).

An official is liable for failing to prevent harm when (1) the official's act or omission poses a "substantial risk of serious harm" and (2) his or her "state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Deliberate indifference" is equivalent to recklessly disregarding a known risk. *Id*. at 836. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 387. Whether the official had the requisite knowledge is a question of fact, which may be shown by circumstantial evidence. *Id*. at 842. Thus, it is clearly a question for the fact-finder.

Page 19 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

Here, there are disputed issues of material fact regarding Lieutenant Salsbury's integral involvement in supervising the arrests and use of force on May 31, 2020. His role that night was mobile field force commander. Dkt 173-3 (Transcript at 32:8-11 and 85:21 to 86:9). He wrote the operations plan, including the rules of engagement, and gave the pre-operations briefing. *Id. (*tr. at 34:15 to 35:5, 73:15-24, 79:6-15). He testified that in that role his tasks were to:

> control the different resources that we have available to us that are deployed in a mobile field force given protest event or situation. So I'm controlling the people, the equipment, and the deployment based upon intelligence and, you know, information being fed back to me about activity that's going on with the crowd to best address and deal with criminal activity, trying to provide for protesters to have a peaceful protest, how to help facilitate that through those resources and keep them safe and keep the community safe and keep businesses safe. And so -- and then my job is to manage or facilitate that or plan that out and, you know, make changes as things are ongoing or progress.

*Id*. (tr. at 32:17 to 33:6). He testified at length to facts which could give rise to an inference that he helped put into motion the events which led to the arrests and projectile assaults that are the subject of this lawsuit. *Id*. (tr. at 30:15-31:22, 35:6-36:8, 42:12-45:19, 51;&-54:17, 56:3-63:4, 72:1-6, 87:16-25, 89:17-90:8, 100:24-101:24). A reasonable jury could find that he was liable for allowing the arrests and the assault on the Campbell Club.

**CONCLUSION**

For the reasons stated herein, Defendants' Motions for Summary Judgment (on the points raised herein) sshould be denied.

Respectfully submitted October 13, 2023.

   /s/ Marianne Dugan
Marianne Dugan, OSB # 932563
Email:  mdugan@cldc.org
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St. Suite 301 #359
Eugene, OR  97401
Telephone:  541.687.9180

Page 20 -- PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS