Lauren C. Regan, OSB # 970878
Email: lregan@cldc.org
Marianne Dugan, OSB # 932563
Email: mdugan@cldc.org
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St. Suite 301 #359
Eugene, OR  97401
Telephone:  541.687.9180

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HASHEEM BOUDJERADA; DAMON COCHRAN-SALINAS; ERIN GRADY; TYLER HENDRY; and KIRTIS RANESBOTTOM, | Case No. 6:20-cv-1265-MK |
| Plaintiffs, | PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SECOND FINDINGS AND RECOMMENDATIONS |
| v. | ORAL ARGUMENT REQUESTED |
| CITY OF EUGENE; SARAH MEDARY; WILLIAM SOLESBEE; SAMUEL STOTTS; BO RANKIN; TRAVIS PALKI; MICHAEL CASEY; RYAN UNDERWOOD; CRAIG WRIGHT; CHARLES SALSBURY; and CHIEF CHRIS SKINNER, | |
| Defendants. | |

Plaintiffs hereby respond to defendants' objections to the second Findings and

Recommendations (Dkt 192), which denied in part defendants' motion for summary judgment.

**I.   THE MAGISTRATE'S FINDINGS AND RECOMMENDATIONS REGARDING THE PORTIONS OF CLAIMS 1 AND 2 AGAINST THE CITY SHOULD BE UPHELD**

Defendants argue (at 2-3):

> The Magistrate Judge erred in recommending the denial of summary judgment to the City on portions of plaintiffs' First and Second Claims for relief. F&Rs at 6-7, 18 [Dkt 192]. The Magistrate Judge did not account for all of the information City officials had that informed their decisions related to the curfew. Specifically, the Magistrate Judge

Page 1 -- PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SECOND F&R

>did not discuss or consider the Chief of Police's and City Manager's justifications, or the evidence available to them at the time. . . . In so doing, the Magistrate Judge erred because he failed to fully account for the rationale behind the Seven-Hour Curfew, the limitations on police resources, the threats faced by the City at that time, and, therefore, how this matter was factually unique from any prior cases cited by plaintiffs.

(Citations to record omitted). Defendants assert that "the Seven-Hour Curfew was issued in response to events occurring contemporaneously, within the context of the pandemic and regional outbreaks of disorder." Dkt 198 at 3.[1] They argue that there was "an ongoing attempt to shut down the Ferry Street Bridge, the most direct route to University District Hospital from north of the Willamette River." *Id*. at 4. But all of these arguments were previously addressed and rejected by this Court.

The Magistrate's earlier Findings and Recommendations (Dkt 187) recommended that plaintiffs' Motion for Summary Judgment be granted in part. Defendants chose not to file objections to that first F&R, and Judge Aiken upheld that F&R, partially granting summary judgment, issuing an order declaring the City-Wide Curfew to be unconstitutional. Dkt 189. That earlier decision already addressed the points defendants raise in part one of their objections, creating law of the case on those points. Defendants have pointed to no exceptions to the law of the case doctrine, and they cannot relitigate those issues now.

    A.    **The Law of the Case Doctrine Applies**

"Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. U.S.*, 841 F.2d 993, 996 (9th Cir. 1988), *amended*, 860 F.2d 357 (9th Cir. 1988). "The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision

---

[1] It is unclear why defendants choose the label "Seven-Hour Curfew" instead of the label used in the F&R, which is "City-Wide Curfew."

Page 2 -- PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SECOND F&R

should continue to govern the same issues in subsequent stages in the same case.'" *Askins v. U.S. Dept. of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) (quoting *Musacchio v. U.S.,* 577 U.S. 237, 244-45 (2016)).

"A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id.*

### B.   Defendants' *Post-Hoc* Covid Argument Was Already Addressed and Correctly Rejected

In the earlier F&R, Magistrate Kasubhai referenced the defendants' Covid excuse, finding it to be an unpersuasive *post-hoc* explanation:

> Although Defendants' response invites the Court to "paus[e] to remember the status of Covid restriction" in the factual overview section of their brief, Defendants' argument does not appear to offer Covid-19 restrictions as an additional reason for the City-Wide Curfew, nor does that reason appear anywhere in the curfew order or Chief Skinner and City Manager Medary's explanations for why the City-Wide Curfew was necessary. The Court therefore does not consider Covid-19 restrictions as part of the government interest to be served by the City-Wide Curfew. Post-hoc explanations are unavailing.

Dkt 187 at 14 n.6.

Ignoring this previous ruling, which is law of the case, defendants exhume this argument. They put additional emphasis on the pandemic in a footnote, saying "the events of this case happened mere months into the COVID-19 pandemic," noting that Covid placed an extra strain on hospitals and jails. Defendants have shown no factors that would allow this Court to ignore the law of the case and the fact that this argument has already been rejected, especially given that

Page 3 -- PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SECOND F&R

defendants had the opportunity to object and present their arguments to the Article III judge for *de novo* review, and chose not to do so.

Even if law of the case did not apply, the earlier decision was correct. In fact, the *post-hoc* Covid rationale undercuts the city's argument. According to the city's current theory, the city could have just relied on those statewide orders to keep people out of the streets, and would not have needed the curfew orders.

The curfew orders never mentioned Covid or the governor's orders. *See* Dkt 104-1, 104-3, 104-5. Nor do the police reports, probable cause affidavits, incident reports, Skinner's or Medary's depositions, or Medary's communications with the citizens and city council. Dkt 104-2, 104-4, 104-9, 104-10, 104-12, 104-13, 104-14, 104-18; 166-1. The "narrowly tailored" part of the time, place, and manner analysis requires scrutinizing the City's stated purpose(s). The stated purposes did not include Covid, nor the governor's orders. Judge Kasubhai did not err in not addressing this previously-rejected *post-hoc* rationale.

> C. **Defendants' Ferry Street Bridge/"Outbreaks of Disorder" Argument Was Already Addressed and Correctly Rejected**

The earlier F&R, upheld by Judge Aiken in granting plaintiffs partial Summary Judgment, found that applying the City-Wide Curfew across the entire city was not reasonable, because the threat was to a specific area. Dkt 187 at 18. Judge Kasubhai also noted how small the group of protestors was and how their behavior did not suggest the type and extent of violence the defendants were concerned about.

In defendants' objections to the second F&R, they renew their allegations of "continuing violence or disruption"; "ongoing attempt to shut down the Ferry St Bridge"; and "multiple groups of individuals, several armed." Dkt 198 at 3-4. These arguments were already addressed and rejected by the Court in granting plaintiffs summary judgment regarding the

Page 4 -- PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SECOND F&R

unconstitutionality of the City-Wide Curfew.

Even if law of the case did not apply, the earlier decision was correct, for the reasons presented in earlier briefs, which plaintiffs incorporate here by reference. For example, as noted in plaintiffs' reply brief (Dkt 165 at 7-8), at the very least there is an issue of fact about whether there was actually an attempt to shut down the Ferry Street Bridge. And Chief Skinner stated in deposition that the purpose of the curfews was to protect the downtown core. Dkt 104-10 at 4-5. Clearly that was not what the citywide expansion was narrowly tailored to address.

Defendants Medary and Skinner were extremely vague in their depositions regarding the events they felt required the curfew to go city-wide. For example, Skinner referred vaguely to weapon(s) earlier in the day (Dkt 115-10 at 8, transcript page 63); and "criminal acts" of property damage (*id*. at 8, transcript page 64). As made clear in *Collins v. Jordan*, 110 F.3d 1363 (9th Cir. 1996), prior restraint of First Amendment activity in response to such earlier, unrelated events, is unconstitutional, so cannot be part of the "narrowly tailored" analysis.

The chief stated that the purpose of *expanding* the curfew citywide was to try to get people to disperse. Dkt 104-10 at 6 line 20 to 7 line 1. And that's what the plaintiffs were trying to do, as discussed in prior briefs and documented in the video evidence. To allow no exception for people heading home, and giving no opportunity to comply, was not narrowly tailored to the dispersal purpose. A dispersal order would have served that purpose. Judge Kasubhai did not err in not addressing this previously-rejected argument.

II. **THE MAGISTRATE'S FINDINGS AND RECOMMENDATIONS REGARDING THE SECOND CLAIM FOR RELIEF AGAINST THE CITY MANAGER AND CHIEF OF POLICE SHOULD BE UPHELD**

Defendants argue that Judge Kasubhai erred in finding that *Collins v. Jordan*, 110 F.3d 1363 (9th Cir. 1996), issued 27 years ago, clearly established that the type of curfew issued here

Page 5 -- PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SECOND F&R

is unconstitutional. Def's Objections at at 3-5 (citing Dkt 192 at 18). Defendants add (at 5):

> Moreover, *Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005), which was decided after *Collins*, upheld a curfew that was in place day and night for several days. 409 F.3d at 1130-1143. That curfew was far more restrictive than the Seven-Hour one at issue here. But "once multiple instances of violence erupt, with a breakdown in social order, a city must act vigorously, and more extensively, to restore order for all of its residents and visitors." 409 F.3d at 1137. In this case the Magistrate Judge did not even consider *Menotti*.
>
> In light of the Ninth Circuit's guidance from *Menotti* in 2005, a reasonable official could have concluded that the Seven-Hour Curfew was lawful. The City Manager and Chief of Police are, therefore, entitled to qualified immunity.

Defendants' attempts to distinguish *Collins* and invoke *Menotti* were already addressed and correctly rejected. It has been clear since *Collins* that it is unconstitutional to shut down all speech in response to prior unrest. In the earlier proceedings, the Magistrate fully addressed both *Collins* and *Menotti*, and rejected these arguments, and Judge Aiken upheld that F&R. That is law of the case, and was correctly decided.

### A. The Court Already Held, Correctly, that this Case is Controlled by *Collins*

In the first F&R, Judge Kasubhai noted that the reason for imposing the curfew was similar between *Collins* and the instant case, both citing prior instances of violence. The first Findings and Recommendations noted that "the facts here are substantially similar to those in *Collins*, compelling this Court to find that the City-Wide Curfew was unconstitutional." Dkt 187 at 15. Judge Aiken upheld that Finding and Recommendation. Dkt 189. The magistrate found that "[t]here are no facts which could lead this Court to come to a different conclusion than did the Ninth Circuit in *Collins*." Dkt 187 at 15.

The magistrate noted that "the defendants acknowledge the facts to be similar, but that *Collins* does not control because *Collins* did not apply traditional constitutional precepts." The magistrate made clear that he was not persuaded by this argument.

Page 6 -- PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SECOND F&R

Even if that was not law of the case, the Court was correct in rejecting the argument, for the reasons presented in the earlier briefs, which plaintiffs incorporate here by reference. As explained in plaintiffs' motion for summary judgment (Dkt 98 at 9 *et seq.*) and reply brief (Dkt 165 at 6-10), the events of May 29 and earlier in the day on May 31 did not allow for shutting the entire city down overnight.

It is true that the *Collins* decision distinguished the targeted emergency orders addressed in that case from broader curfews. Indeed, plaintiffs noted this in their motion for summary judgment. Dkt 98 at 7 n.1. However, as plaintiffs explained in that brief (both in the footnote and in the body of the brief), the Eugene citywide curfew was unconstitutionally broad, given its huge geographic scope, the way it was implemented, the lack of notice in the face of the nationwide outrage against Mr. Floyd's murder and other police brutality, and the special importance of nighttime vigils in that context. Like the orders addressed in *Collins*, it impermissibly shut down the entire city as a prior restraint, in response to incidents on a previous night. Furthermore, as discussed in plaintiff's summary judgment brief, in *Nunez by Nunez v. City of San Diego*, 114 F.3d 935 (9th Cir. 1997), the Ninth Circuit made clear that a curfew order that does not provide an exception for First Amendment activity violates the constitution.

Judge Kasubhai did not err in not again rejecting this previously-rejected argument.

### B. The Court Already Held, Correctly, that this Case is Distinguishable from *Menotti*

Defendants assert in their objection that the magistrate judge did not consider *Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005), in the second F&R. Dkt 198 at 5. But that is because Judge Kasubhai thoroughly addressed *Menotti* in the *first* F&R, and rejected defendants' argument based on that case. Dkt 187 at 16-17, 19-22. The magistrate, whose F&R was upheld by Judge Aiken (Dkt 189), was not persuaded that *Menotti* compelled a different result, finding

Page 7 -- PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SECOND F&R

that the facts are "critically different" here. *Id*. at 17. The magistrate found that evidence of prior violence here did not amount to the kind in *Menotti*, and that there was no evidence here showing that protestors were using non-violent protestors as "buffers," as in *Menotti*. Ignoring the law of the case doctrine, defendants again assert that *Menotti* is relevant and supports upholding the City-Wide curfew. Dkt 198 at 5.

As this court previously held, *Menotti* did not overrule *Collins* in any way. To the contrary, *Menotti distinguished Collins*. The magistrate noted this in the first F&R, quoting the part of *Menotti* that stated: "in so ruling, the court distinguished Collins on two bases: (1) that the violence the city faced prior to the restriction was much less severe in Collins, and (2) that the restriction was much broader." Dkt 187 at 17 (citing 409 F.3d at 36). The magistrate made clear in the first F&R that he found the facts closer to what happened in *Collins* than in *Menotti*.

Even if that was not law of the case, the Court was correct in rejecting the argument, for the reasons presented in the earlier briefs, which plaintiffs incorporate here by reference. Dkt 98 at 7-11; Dkt 165 at 4-5. For example, although the *Menotti* court held that the WTO restricted zone was justified, the court distinguished from *Collins*, because the WTO curfew was not citywide. In *Collins*, "San Francisco restricted speech throughout the whole county, while Seattle merely restricted access within a well-defined security zone to facilitate a public event." 409 F.3d at 1136. Judge Kasubhai did not err in not again rejecting this previously-rejected argument.

### III. THE MAGISTRATE'S FINDINGS AND RECOMMENDATIONS REGARDING THE THIRD CLAIM FOR RELIEF AGAINST THE CITY, CITY MANAGER, AND CHIEF OF POLICE SHOULD BE UPHELD

Finally, defendants argue (at 5-6), that Judge Kasubhai erred in recommending rejection of defendants' motion for summary judgment on the Third Claim for Relief. Plaintiffs incorporate by reference their previous briefing on this issue. Dkt 172 at 8-11.

Defendants argue that one of the cases Judge Kasubhai cited, *Johnson v. City of San Jose*, 2022 WL 17583638 (N.D. Cal. Dec. 12, 2022), concerned a motion to dismiss as opposed to summary judgment. However, the *Johnson* court was addressing a question of *law*, not whether the complaint was properly pled, and as such, the *Johnson* court cited the test applied at the summary judgment stage, in *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002). As the *Johnson* court explained:

> Officer Adgar contests the third prong -- whether Johnson's protected conduct was a "substantial or motivating factor" in his response. . . . This element "may be met with either direct or circumstantial evidence" and often "involves questions of fact that normally should be left for trial." [*Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817,] 827 [(9th Cir. 2020).] (citing *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002)). Johnson has "pleaded adequate facts supporting an inference that the widespread use of force against mostly peaceful protestors was aimed at 'intimidating protestors to deter [their] speech,' which was anti-police in focus." *See Sanderlin v. City of San Jose*, No. 20-cv-04824-BLF, 2022 WL 913055, at *7 (N.D. Cal. Mar. 29, 2022) (quoting *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 399 (N.D. Cal. 2021)); *see also Anti Police-Terror Project v. City of Oakland*, 477 F. Supp. 3d 1066, 1088 (N.D. Cal. 2020) (inference warranted from allegations of "aggressive conduct" by officers, including "shooting a reporter with a rubber bullet"); *Don't Shoot Portland v. City of Portland*, 465 F. Supp. 3d 1150, 1155-56 (D. Or. 2020) (inference warranted from allegations that "officers indiscriminately used force against peaceful protestors on multiple occasions," "fire[d] tear gas canisters as people attempted to leave the protest area," and subjected protestors to "rubber bullets, tear gas, and a flash bang grenade at close range . . . as [they tried] to comply with officers' orders"); *Black Lives Matter Seattle-King Cnty. v. City of Seattle*, 466 F. Supp. 3d 1206, 1214 (W.D. Wash. 2020) (inference warranted from use of "indiscriminate weapons" against all protestors and "excessive amount" of chemical agents).

*Id*. at *5. The *Johnson* court went on to conclude:

> As other district courts have noted, given that the protestors were specifically protesting police misconduct, it is reasonable to allege that the protestors' viewpoint was a substantial or motivating cause – even if not necessarily the sole cause – behind the defendants' conduct." *NAACP*, 562 F. Supp. 3d at 399-400.

*Id*. at *5-*6.

In *Ulrich* and other cases addressing the summary judgment stage, the Ninth Circuit has

Page 9 -- PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SECOND F&R

noted that the evidence of discriminatory animus will almost always be circumstantial, because "[d]efendants who articulate a nondiscriminatory explanation for a challenged employment decision may have been careful to construct an explanation that is not contradicted by known direct evidence." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (quoting *Texas Dept of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Indeed, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957).

> Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action. . . . Moreover, "[q]uestions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment." *Braxton-Secret v. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985).

*Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999).

Therefore, the Ninth Circuit has consistently allowed an inference of retaliatory intent when the adverse action comes closely in time after the protected activity, rejecting summary judgment on such issues. *See, e.g.*, *Schwartzman v. Valenzuela*, 846 F.2d 1209, 1212 (9th Cir. 1988); *Bell v. Clackamas County*, 341 F.3d 858 (9th Cir. 2003); *Winarto v. Toshiba Am. Elecs Components, Inc.*, 274 F.3d 1276, 1287 n.10 (9th Cir. 2001); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *Stegall v. Citadel Broadcasting*, 350 F.3d 1061 (9th Cir. 2003); *Hernandez v. Spacelabs*, 343 F.3d 1107 (9th Cir. 2003); *Porter v. Calif. Dept of Corrections*, 383 F.3d 1018 (9th Cir. 2004) (collecting cases).

Defendants also argue (at 6) that *Johnson* "could not have clearly established anything," because it was issued after the events that gave rise to this lawsuit. But, in citing *Johnson*, the Magistrate also cited "the cases collected in it." Dkt 192 at 20. *Johnson* and the cases cited

Page 10 -- PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SECOND F&R

therein hold that plaintiffs need not prove individualized retaliatory intent, but only intent to retaliate for the group's anti-police sentiments being expressed. Although those cited cases were recent, two of them cite back to *Mendocino* for the appropriate test, of which this is simply a subset. The broader test is whether "'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'" *Mendocino*, 192 F.3d at 1300 (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)). *See Don't Shoot Portland v. City of Portland*, 465 F. Supp. 3d 1150, 1155 (D. Or. 2020) (citing *Mendocino* test); *Anti Police-Terror Project v. City of Oakland*, 477 F. Supp. 3d 1066, 1088 (N.D. Cal. 2020) (same).

Defendants cite to no authority that a defendant cannot be held liable for retaliating against a *crowd* of people for expressing their views, by issuing orders that chill and quash speech and expressive conduct. Nor do they cite to authority that a plaintiff in a retaliation case must prove individualized animus towards a particular person in such a crowd. Judge Kasubhai correctly found and recommended that defendants' summary judgment motion on Claim Three should be rejected.

**CONCLUSION**

There are at the very least issues of material fact precluding summary judgment for defendants on the claims defendants address in their objections. A reasonable jury could find for plaintiffs on each of these claims, applying the correct law as instructed by the court.

In addition, the bulk of defendants' arguments were already addressed and, correctly, rejected, in the prior proceedings. As defendants have not presented any argument that the exceptions to the law of the case doctrine applies, it would be an abuse of discretion to revisit those arguments.

Defendants' motions for summary judgment that are addressed herein should be rejected.

Respectfully submitted October 27, 2023

  /s/ Marianne Dugan
Marianne Dugan, OSB # 932563
Email:  mdugan@cldc.org

  /s/ Lauren Regan
Lauren Regan, OSB # 970878
Email: lregan@cldc.org

CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St. Suite 301 #359
Eugene, OR  97401
Telephone:  541.687.9180