**Ben Miller, OSB #074690**
BMiller@eugene-or.gov
Eugene City Attorney's Office
500 East 4th Avenue, Suite 301
Eugene, OR 97401
Telephone: (541) 682-8447
Facsimile:  (541) 682-5414

Of Attorneys for Defendants City of Eugene,
Sarah Medary, Samuel Stotts, Bo Rankin,
William Solesbee, Travis Palki,
Michael Casey, Craig Wright,
Charles Salsbury, Chief Chris Skinner,
and Ryan Underwood

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **HASHEEM BOUDJERADA, DAMON COCHRAN-SALINAS, ERIN GRADY, TYLER HENDRY,** and **KIRTIS RANESBOTTOM,**<br><br>                    Plaintiffs,<br><br>    v.<br><br>**CITY OF EUGENE, SARAH MEDARY, SAMUEL STOTTS, BO RANKIN, WILLIAM SOLESBEE, TRAVIS PALKI, MICHAEL CASEY, CRAIG WRIGHT, CHARLES SALSBURY, CHIEF CHRIS SKINNER, AND RYAN UNDERWOOD,**<br><br>                    Defendants. | Case No: 6:20-cv-01265-AA<br><br><br><br>**DEFENDANT CHIEF CHRIS SKINNER'S REPLY TO MOTION FOR SUMMARY JUDGMENT**<br><br><br>**Fed. R. Civ. P. 56** |

    Chief Skinner moved for summary judgment against the enforcement portion of the plaintiffs' First Amendment retaliation claim under the first prong of qualified immunity because there was no constitutional violation. He did not retaliate against anyone, participate in any retaliation, or facilitate any retaliatory enforcement of the Curfew Orders. Second, Chief Skinner moved for summary judgment under the second prong of the qualified immunity analysis, because no law makes clear that an official making high-level curfew decisions that temporarily

PAGE 1 - DEFENDANT CHIEF CHRIS SKINNER'S REPLY TO MOTION FOR SUMMARY JUDGMENT

restrict access of the general public, and facilitating enforcement of the curfew generally, can then be held liable for retaliating against a particular individual's expression. That premise is certainly not a clearly established rule of law, thereby entitling Chief Skinner to qualified immunity.

## DISCUSSION

Plaintiffs begin their analysis of the claim against Chief Skinner in his personal capacity by broadly painting *all* actions by *all* police officers against *any* individual on May 31, 2020, as part of their own *personal* retaliatory enforcement claim. However, that is not how such a claim works. There are numerous flaws with this theory. First, none of what plaintiffs now claim as their evidence was disclosed in their interrogatories or at depositions. As a result, they cannot come up with new accounts and evidence. Second, even if the failure to disclose their claims could be overlooked, plaintiffs must show Chief Skinner's personal involvement and how it resulted in retaliatory enforcement directed at them. Plaintiffs instead point to the actions of others who Chief Skinner was not directing and had no personal involvement in at the time they were occurring. Finally, plaintiffs point to no case that has any resemblance to the facts of this one to show that Chief Skinner should have been on notice that his own actions were clearly unconstitutional. For all these reasons he will be entitled to qualified immunity.

1) **Plaintiffs Failed to Provide any Facts to Support this Claim.**

Chief Skinner first argued that in discovery plaintiffs provided no evidence that he attempted to retaliate against them or even what he did. Motion at pp. 10-12 [Doc. 222]. He specifically cited to each plaintiffs' interrogatory response and to their responses to deposition questions. *Id*. [Doc. 222]. Plaintiffs refuse to even engage with this argument, just overlooking their failure to disclose and providing an overall account of general events with no reference to their own personal circumstances nor why they could not have disclosed such answers earlier or why they still, to this day, have never supplemented their discovery responses. Plaintiffs' Response at pp. 2-8 [Doc. 224].

Plaintiffs should not be allowed to raise new theories and evidence for the first time at this juncture. *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)

PAGE 2 - DEFENDANT CHIEF CHRIS SKINNER'S REPLY TO MOTION FOR SUMMARY JUDGMENT

(quoting *Fleming v. Lind-Waldock & Co.*, 992 F.3d 20, 24 (1st Cir. 1990)) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (trial court did not err in dismissing claim raised for the first time at summary judgment where plaintiffs had evidence to support new claim prior to filing of summary judgment motion). Allowing plaintiffs to proceed on new theories and evidence would prejudice defendants because "[a] complaint guides the parties' discovery putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman*, 232 F.3d at 1292. Here, the Second Amended Complaint did not put defendants on notice that Chief Skinner's general Department-wide supervisory role, as opposed to his own personal actions, were the basis for plaintiffs' retaliatory enforcement claim. Nor did plaintiffs supplement their discovery responses to disclose the facts supporting such theories.

   **2) Plaintiffs' Actual Factual Scenarios.**

   At approximately 11:07 pm plaintiff Boudjerada was arrested by Sergeant Stotts and Officers Palki and Casey near Patterson and East 13th Avenue. [Doc. 187 at p. 8]. At the time of his arrest he had stopped protesting and was just walking back to his car. First Boudjerada Depo. at 50:17-51:3, 95:11-13 [Doc. 148-8]. Plaintiffs point to no evidence Chief Skinner was aware of plaintiff Boudjerada, was aware of his speech activities, or directed the arrest.

   At approximately the same time plaintiff Hendry was arrested by Officers Underwood and Sergeant Stotts, again, near Patterson and East 13th Avenue. [Doc. 187 at p. 8]. At the time of his arrest Mr. Hendry had been standing in the bike lane interfering with traffic, then went to look for a friend's glasses. First Hendry Depo. at 100:2-102:2 [Doc. 148-7]. But he also admits he has no evidence he was targeted by the officers for his speech. First Hendry Depo. at 67:12-24; 100:2-102:2 [Doc. 148-7]. Plaintiffs point to no evidence Chief Skinner was aware of plaintiff Hendry, was aware of his speech activities, or directed the arrest.

   At approximately 11:15 pm plaintiff Grady was arrested by Officer Stotts following warnings for her to leave near Patterson and East 13th Avenue. [Doc. 187 at pp. 8-9]. At the time of her arrest she was not protesting. She was attempting to contact jail custodies. First Grady

PAGE 3 - DEFENDANT CHIEF CHRIS SKINNER'S REPLY TO MOTION FOR SUMMARY JUDGMENT

Depo. at 75:19-23 [Doc. 148-6]. Again, plaintiffs point to no evidence Chief Skinner was aware of plaintiff Grady, was aware of her speech activities, or directed the arrest. Nothing about those specific arrests – which are the enforcement of the curfew against *these* plaintiffs, show any involvement by Chief Skinner. The radio traffic about Captain Klinko authorizing gas to keep *other* protesters from entering the UO campus occurred at approximately 11:11 pm – away from the location of the arrests of *these* three plaintiffs. [Doc. 157 at p. 3] ( 05/31/20 23:10:58). Moreover, none of *these* three plaintiffs had gas deployed on or at them.

At approximately 11:20 pm plaintiff Cochran-Salinas was present inside the Campbell Club when Sgt. Solesbee attempted to shoot *another* individual and struck the door of the place Mr. Cochran Salinas was renting. [Doc. 192 at p. 4]. At the time the projectiles struck the Campbell Club he was not protesting. He was smoking a cigarette on the porch. First Cochran Salinas Depo. at 32:24-33:3 [Doc. 148-16].

Plaintiff Ranesbottom, had already gone home hours earlier in response to the constitutional downtown curfew, and was upstairs in his room playing video games when the door to the Campbell Club was struck. [Doc. 192 at p. 4]; First Ranesbottom Depo. at 57:16-58:10 [Doc. 148-15].

Again, nothing about those events shows any personal involvement or approval by Chief Skinner. Instead, Chief Skinner's involvement in the *enforcement* of the Curfew Orders was non-existent. He was primarily stationed at Police Headquarters at 300 Country Club Road on the opposite side of the Willamette River from plaintiffs. Skinner Decl. ¶ 12 [Doc. 150]. He did not direct any arrests to occur. *Id*. [Doc. 150]. He did not direct any specific applications of force to occur. *Id*. [Doc. 150]. He was not physically present at the arrests of those plaintiffs who were arrested or where any uses of force occurred in their vicinity. *Id*. [Doc. 150].

He also did not authorize the use of excessive force. Skinner Decl. ¶ 13. [Doc. 150]. He did not authorize unlawful arrests. Skinner Decl. ¶ 15 [Doc. 150]. He understood that officers out in the field would need to comply with the City policy – and the Constitution – against retaliatory arrests or citations by officers. Skinner Decl. ¶ 6 [Doc. 150]. He understood officers would only be allowed to make arrests or issue citations when supported by probable cause and

to only use force when justified under the totality of circumstances, not out of a desire to chill anyone's freedom of expression. *Id*. [Doc. 150].

He knew the Eugene Police Department expects its employees to provide equitable law enforcement services to the community with due regard for the viewpoint or protected class status of those served. Skinner Decl. ¶ 9 [Doc. 150]. He knew that all Eugene Police employees are forbidden to engage in retaliatory enforcement actions, arrests without probable cause, excessive force, or viewpoint discrimination. *Id*. [Doc. 150]. He also knew decisions about use of force or arrests would be reviewed – including by an Independent Police Auditor – for compliance with policy and could result in discipline for the involved officer. Skinner Decl. ¶¶ 10, 13, and 15. [Doc. 150].

**3) Chief Skinner is Entitled to Qualified Immunity Under the First Prong.**

Turning to the application of facts to this claim, Chief Skinner had no involvement in any retaliatory enforcement. "An official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'" *Hines v. Youseff*, 914 F.3d 1218, 1230-1232 (9th Cir. 2019); *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011); *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Chief Skinner did not enforce the curfew. Skinner Decl. ¶ 12 [Doc. 150]. He did not direct any arrests. *Id*. He did not direct any use for force. *Id*. He was not physically present. *Id*.

*Puente v. City of Phoenix*, 123 F.4th 1035 (9th Cir. 2024) involved a similar protest event and is on point:

> We affirm the district court's summary judgment to Defendant Police Chief Williams. Plaintiffs contend that, as a supervisor, she was liable for the individual officers' violations of their constitutional rights. To establish such liability, Plaintiffs must demonstrate that Williams either "participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Preschooler II v. Clark County Sch. Bd. of Trs*., 479 F.3d 1175, 1182 (9th Cir. 2007) (simplified). But there can be no such supervisorial liability in the absence of an underlying constitutional violation. Moreover, we have held that, when the subordinate officers have not been shown to have "violated a clearly established right, it necessarily follows that [their police supervisors] cannot have violated a clearly established right by supervising" those officers. *Felarca*, 891 F.3d at 823. Because we have concluded that all of plaintiffs' claims either fail or did not involve the violation of a clearly established right, Plaintiffs' claims of

PAGE 5 - DEFENDANT CHIEF CHRIS SKINNER'S REPLY TO MOTION FOR SUMMARY JUDGMENT

> supervisorial liability necessarily fail. On that basis, we affirm the district court's grant of summary judgment to Williams.
>
> *Id*. at 1064.

While no First Amendment violations were leveled against the individual officers, this court has previously granted summary judgment to each of the officers who arrested or used force against plaintiffs on the basis of qualified immunity. [Doc. 192 at pp. 21-29]. The court further granted summary judgment to Lieutenant Salsbury – the acting field force commander - in his supervisory capacity for those same individuals. [Doc. 192 at pp. 5, 29-30].

Plaintiffs' attempt to hold Chief Skinner liable for the actions of others, like Sergeant Stotts or Sergeant Solesbee, fails. Mere knowledge after the fact cannot be causally linked to previously committed constitutional violations. *See Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011) ("[P]laintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury."). Without more, plaintiffs have not shown that Chief Skinner personally participated in plaintiffs' arrests or any enforcement of the City-wide curfew or that there was a causal connection between Chief Skinner's conduct and the alleged retaliation by *other* officers on the ground against these plaintiffs.

The Chief of Police did not know any of the plaintiffs and was not motivated to retaliate against any of the plaintiffs. Skinner Decl. ¶¶ 3, 6 [Doc. 150]. As discussed above, plaintiffs themselves presented no objective evidence. Even assuming plaintiffs engaged in protected speech activity, they cannot connect their actions to decisions by the Police Chief. He did not participate in any violation of the First Amendment.

**4) Chief Skinner is Entitled to Qualified Immunity Under the Second Prong.**

Chief Skinner next moved for summary judgment under the second prong, arguing that plaintiffs will be unable to present any clearly established law to the contrary. As expected, plaintiffs identified *Ballentine v. Tucker*, 28 F.4th 54 (9th Cir. 2022), a case decided two years after the events at issue here, as the source of that clearly established law. Defendants had previously conferred with plaintiffs regarding this case and addressed, in great detail, why it was inapplicable to this scenario. Specifically, that case involved the personal involvement of a

detective and this case had no evidence of similar personal involvement. Motion at pp. 16-18 [Doc. 222].

Despite Chief Skinner's best efforts to engage in an analytically honest analysis of the facts of the *Ballentine* case, plaintiffs made no effort to respond to anything defendant wrote. Instead, plaintiffs presented a rote discussion of the bare holdings of *Ballentine* and other cases without applying them to the facts of this case. Plaintiffs' Response at pp. 24-27 [Doc. 224]. Nor did plaintiffs even discuss *Moore v. Garnand*, 83 F.4th 743 (9th Cir. 2023), the case which Chief Skinner argued was more on point. Motion at p. 17 [Doc. 222].

Since Chief Skinner filed his motion for summary judgment another case has been decided which makes it even more clear Chief Skinner is entitled to qualified immunity. On August 1, 2025, the Ninth Circuit decided *Cheairs v. City of Seattle*, a case that held that an officer who was physically present, but unable to see a protester because of his position on the skirmish line, could not be held liable for a First Amendment Retaliation claim for throwing a blast ball diversionary device because he did not know who he was throwing it at. 145 F.4th 1233, 1246-1247 (2025).

> Whether an officer was motivated by discriminatory animus "involves questions of fact that normally should be left for trial," *id.*, but here, Cheairs fails to present a triable issue with respect to the third element of his retaliation claim. Cheairs testified in his deposition that he had no reason to believe that Officer Anderson intended to hit him with a blast ball as he stood filming the protest. And in response to the summary judgment motion, he offered no evidence that Officer Anderson was aware that Cheairs was filming the protest, much less that Officer Anderson sought to retaliate against him for exercising his First Amendment rights. Indeed, the record corroborates Officer Anderson's statements that there was a line of SPD officers standing in front of him, blocking his view. Unlike the plaintiffs in these cases, Cheairs did not meet his burden of offering admissible evidence to show a material dispute of fact concerning the causal relationship between his protected activity and his subsequent injury. *See Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019).

*Id*. at 1246.

The Ninth Circuit therefore affirmed the district court's order granting summary judgment with respect to Cheairs' First Amendment claim. *Id*. at 1247. Here too Chief Skinner was not physically present and there is no admissible evidence to show he was aware of any of

the plaintiffs, that he directed any arrests or uses of force, or that he was aware other officers were going to engage in *retaliatory* arrests or uses of force.

To summarize, Chief Skinner is entitled to qualified immunity because it would not have been clear to a reasonable official that their decision to expand a temporary curfew in response to public safety concerns would give rise to a claim for retaliation from individuals that official has never met. *Boudjerada v. Medary*, 2025 WL 502484, *2 (9th Cir. Feb. 14, 2025). Likewise, it would not be clear to a reasonable official that a generalized plan to have other police officers enforce that same expanded curfew in a viewpoint neutral way would likewise give rise to a claim for retaliation from individuals that official has never met.

## CONCLUSION

For the foregoing reasons, the court should grant Chief Skinner's Motion for Summary Judgment. The court should enter judgment in favor of Chief Skinner on all claims, award him his reasonable costs, and grant such further and additional relief as is just and proper.

DATED this 12th day of September, 2025.

**CITY OF EUGENE**

By:    s/ Ben Miller
Ben Miller, OSB #074690
BMiller@eugene-or.gov
Telephone:(541) 682-8447
Facsimile: (541) 682-5414

Of Attorneys for Defendants
City of Eugene, Sarah Medary,
Samuel Stotts, Bo Rankin,
William Solesbee, Travis Palki,
Michael Casey, Craig Wright,
Charles Salsbury, Chief Chris Skinner,
and Ryan Underwood

PAGE 8 - DEFENDANT CHIEF CHRIS SKINNER'S REPLY TO MOTION FOR SUMMARY JUDGMENT

# CERTIFICATE OF SERVICE

I certify that on this 12th day of September, 2025, I served or caused to be served a true and complete copy of the foregoing **DEFENDANT CHIEF CHRIS SKINNER'S REPLY TO MOTION FOR SUMMARY JUDGMENT** on the party or parties listed below as follows:

__X__    Via CM / ECF Filing

_____    Via First Class Mail, Postage Prepaid

_____    Via Email

_____    Via Personal Delivery

Marianne Dugan
Lauren Regan
1430 Willamette Street, #359
Eugene, OR 97401

Attorneys for Plaintiffs

**CITY OF EUGENE**

By:    s/ Ben Miller
Ben Miller, OSB #074690
BMiller@eugene-or.gov
Telephone: (541) 682-8447
Facsimile:  (541) 682-5414

Of Attorneys for Defendants
City of Eugene, Sarah Medary,
Samuel Stotts, Bo Rankin,
William Solesbee, Travis Palki,
Michael Casey, Craig Wright,
Charles Salsbury, Chief Chris Skinner,
and Ryan Underwood.

CERTIFICATE OF SERVICE