IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

HASHEEM BOUJERADA; DAMON COCHRAN-SALINAS; ERIN GRADY; TYLER HENDRY; KIRTIS RANESBOTTOM,

Plaintiffs,

v.

CITY OF EUGENE; SARAH MEDARY; SAMUEL STOTTS; BO RANKIN; WILLIAM SOLESBEE; TRAVIS PALKI; MICHAEL CASEY; CRAIG WRIGHT; CHARLES SALSBURY; CHIEF CHRIS SKINNER; RYAN UNDERWOOD,

Defendants.

Civ. No. 6:20-cv-01265-AA

**OPINION & ORDER**

---

AIKEN, District Judge.

This case comes before the Court on Defendant Chief Chris Skinner's Motion for Summary Judgment, ECF No. 222. For the reasons set forth below, the motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

### I. Factual Background

The full factual background of this case has been set forward at length in Judge Kasubhai's Findings and Recommendations on motions for summary judgment, *Boujerada v. City of Eugene*, Case No. 6:20-cv-01265-MK, 2023 WL 3903751 (D. Or. May 24, 2024) and 2023 WL 11054157 (Dr. Or. Sept. 8, 2023) and are incorporated by reference.

To briefly summarize, protests took place in Eugene, Oregon on May 29, 30, and 31, 2020, following the death of George Floyd at the hands of Minneapolis police. The protests on the nights of May 29 and 30, 2020, were tumultuous and, as a result, City Manager Sarah Medary declared a state of emergency for the City of Eugene and ordered a temporary night-time curfew for downtown Eugene beginning on May 30, 2020, through the morning of May 31, 2020. On the evening of May 31, 2020, Medary ordered a temporary nighttime curfew for downtown Eugene from 9:00 p.m. on May 31, 2020, to 6:00 a.m. on June 1, 2020.

At around 10:30 p.m. on May 31, 2020, Defendant Eugene Chief of Police Chris Skinner, relying on the reports of the evening and his experience as a public safety officer, recommended that Medary institute a city-wide curfew immediately, based on reports of violent incidents at the protests and the potential for more violence outside of the downtown curfew boundaries. Medary authorized the city-wide curfew at 10:49 p.m., which was to take effect at 11:00 p.m. The expanded curfew was communicated to police at 10:57 p.m. and police announced it to the crowd of protestors.

At 11:07 p.m., police officers arrested Plaintiff Hasheem Boujerada and shortly afterwards arrested Plaintiff Tyler Hendry for violating the city-wide curfew. At approximately 11:15 p.m., police arrested Plaintiff Erin Grady for violating the city-wide curfew.

Plaintiffs Damon Chochran-Salinas and Kirtis Ranesbottom were residents of a housing cooperative known as the Campbell Club. On the night of May 31, 2020,

they participated in the protests but returned home before the city-wide curfew went into effect. Police pursued a third party who took shelter in the Campbell Club and, during the pursuit, they fired impact munitions which damaged the building. Police also deployed teargas, which seeped into the building.

During the relevant time, Skinner was primarily stationed at the Eugene Police Headquarters. Skinner Decl. ¶ 12. ECF No. 150. Skinner was not physically present for the arrests of Boujerada, Hendry, or Grady, nor was he present for the use of force against Chochran-Salinas or Ranesbottom. *Id*. Skinner has never met any Plaintiffs in this case, did not know any of them, and did not direct any arrests or any specific applications of force. *Id.* ¶¶ 6, 12. Skinner did not authorize the use of excessive force, nor did he authorize unlawful arrests. *Id.* ¶¶ 13, 15.

## II. Procedural Background

On March 26, 2024, the Court adopted an F&R from Judge Kasubhai granting in part and denying in part a motion for summary judgment filed by Defendants City of Eugene, Medary, and Skinner; granting a motion for summary judgment filed by Defendants Underwood, Casey, Palki, Stotts, and Rankin; and granting a motion for summary judgment filed by Defendants Solesbee, Wright, and Salsbury. ECF No. 204.

On appeal, the U.S. Circuit Court of Appeals for the Ninth Circuit considered the denial of qualified immunity on two of the claims in the Second Amended Complaint ("SAC"): Plaintiffs' First Amendment challenge to the city-wide curfew order (the "Curfew Claim"), and Plaintiffs' First Amendment retaliation claim (the

"Retaliation Claim"). *Boujerada v. City of Eugene*, No. 24-2419. 2025 WL 502484, at *1 (9th Cir. Feb. 14, 2025). The Ninth Circuit reversed the denial of qualified immunity on Curfew Claim. *Id.* at *2.

With respect to the Retaliation Claim, the Ninth Circuit noted that the scope of the claim was unclear and that the SAC "suggests that the Retaliation claim against Skinner and Medary encompasses both the *imposition* of the curfew and the retaliatory *enforcement* of the curfew by other law enforcement officers pursuant to Skinner and Medary's orders." *Boujerada*, 2025 WL 502484, at *3 (emphasis in original). The Ninth Circuit reversed the denial of qualified immunity on the "imposition" portion of the Retaliation Claim, finding that the Court had conducted its qualified immunity analysis at too high a level of generality. *Id.* at *2. With respect to the "enforcement" portion of the Retaliation Claim, the Ninth Circuit held that:

> The parties did not clarify the scope of the Retaliation Claim before the district court. Given the parties' presentation below, the district court never considered whether qualified immunity applies for the retaliatory enforcement of the curfew. As a result, the contours of the enforcement Retaliation Claim are still vague. At oral argument, for example, Plaintiffs stated for the first time that, despite language in their operative complaint to the contrary, they alleged their claim for retaliatory enforcement of the curfew against only Skinner and not Medary . . . Plaintiffs insist there is a retaliatory enforcement claim, but this claim has been modified on appeal and was neither adequately explained in the operative complaint nor addressed below.

*Id.* at * 3.

The Ninth Circuit therefore remanded the case for consideration of the enforcement portion of the Retaliation Claim in the first instance. *Boujerada*, 2025 WL 502484, at *3. The present motion follows.

**DISCUSSION**

The Court must first address the scope of the enforcement portion of the Retaliation Claim. In the third claim of the Second Amended Complaint ("SAC"), which alleges First Amendment retaliation against Skinner,[1] Plaintiffs allege that (1) they were engaged in constitutionally protected activity when "Defendants, acting or purporting to act in the performance of their official duties as law enforcement officers, pursuant to the orders and policies of Defendants City of Eugene . . . and Skinner caused Plaintiffs to suffer injuries that would chill a person ordinary firmness from continuing to engage in that activity." SAC ¶ 141. ECF No. 78. For the enforcement portion of the Retaliation Claim, Plaintiffs alleged that Skinner's acts and omissions, "including the implementation of the curfews and the violence used to enforce the curfews, were substantially motivated by a desire to retaliate against Plaintiffs' exercise of constitutionally-protected conduct as well as a desire to retaliate against Plaintiffs' [sic] for the actions of others." *Id.* Plaintiffs alleged that Skinner "authorized the arrests and the uses of force [against Plaintiffs], through delegation to Defendants Stotts, Solesbee, and Wright." *Id.* at ¶ 28.

[1] The SAC alleges this claim against Medary and Skinner, but on appeal Plaintiffs clarified that the enforcement portion of the Retaliation Claim was alleged against Skinner alone. *Boujerada*, 2025 WL 502484, at *3.

In their Response to Skinner's Motion for Summary Judgment, Plaintiffs appear to assert that Skinner is personally liable for the acts of all Eugene police in a department-wide supervisory capacity. The SAC alleges, however, that it was Skinner's personal acts—his orders to the officers—and his "desire to retaliate against Plaintiffs' exercise of constitutionally-protected conduct" that give rise to the claim. SAC ¶ 141. Plaintiffs may not advance new, unpleaded legal theories in response to a motion for summary judgment. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).

Skinner has moved for summary judgment on the enforcement portion of the Retaliation Claim and has asserted the defense of qualified immunity.

## I. Qualfied Immunity Generally

An official is entitled to qualified immunity so long as "their conduct does not violate clearly established statutory of constitutional rights of which a reasonable person would have known." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (quoting *Pearson v. Callahan*¸ 555 U.S. 223, 231 (2009). "Qualified immunity is an 'entitlement not to stand trial or face the other burdens of litigation.'" *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). As such, courts "must resolve immunity questions at the earliest possible stage in litigation." *Torres*, 648 F.3d at 1123 (internal quotation marks and citation omitted).

To determine whether qualified immunity applies, a court must examine: "(1) whether a public official has violated a plaintiff's constitutionally protected rights;

and (2) whether the particular right that the official violated was clearly established at the time of the violation." *Shafer*, 868 F.3d at 1115 (citing *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en banc)). Courts have discretion in deciding which prong to address first, depending on the circumstances of the case. *Peason v. Callahan*¸ 555 U.S. at 242-43.

The Supreme Court has repeatedly admonished courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citation omitted). Qualified immunity is not analyzed as a "broad general proposition," but rather looks at "the specific context of the case." *Spencer v. Pew*, 117 F.4th 1130, 1138 (9th Cir. 2024) (internal quotation marks and citation omitted). For a right to be "clearly established," the contours of the right must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014). Thus, except in obvious cases, a plaintiff must identify a case that puts the officer on notice that his conduct in the particular case was unlawful. *Spencer*, 117 F.4th at 1138.

Even if a right is clearly established, qualified immunity protects an official from reasonable mistakes about the legality of his actions. *Wilkins v. City of Oakland*, 350 F.3d 949, 954-55 (9th Cir. 2003). The official is still entitled to qualified immunity if the official could have believed, "reasonably, but mistakenly" that his or her conduct did not violate a clearly established constitutional right. *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). "The protection of qualified immunity

applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotation marks and citation omitted).

When the issue of qualified immunity is raised at summary judgment, the facts must be viewed in the light most favorable to the plaintiff. *Gonzalez v. City of Phoenic*¸163 F.4th 1289, 1296 (9th Cir. 2026).

## II. First Amendment Retaliation Generally

"The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). To prevail on a claim for First Amendment retaliation, a plaintiff must show (1) they engaged in constitutionally protected activity; (2) as a result they were subjected to an adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the defendant's action was substantially motivated by the constitutionally protected activity. *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020).

To prevail on a First Amendment retaliation claim, a plaintiff "must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation marks and citation omitted). "It is not enough to show that an official acted with a retaliatory motive and the plaintiff was injured—the motive must *cause* the injury," and it must specifically be the "but-for" cause of the injury, "meaning that

the adverse action would not have been taken absent the retaliatory motive." *Id.* at 398-99.

An intent to inhibit speech "can be demonstrated either through direct or circumstantial evidence." *Mendocino Env't Center v. Mendocino Cnty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999). "Direct evidence of improper motive or an agreement among parties to violate a plaintiff's constitutional rights will only rarely be available" and so "it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Id.* at 1302. The possibility that other inferences could be drawn that would provide an alternate explanation for the defendant's actions does not entitle them to summary judgment. *Id.* at 1303. However, "speculation as to [the defendant's] improper motive does not rise to the level of evidence sufficient to survive summary judgment." *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003).

## III. Clearly Established Law

As noted, Defendants argue that Skinner is entitled to summary judgment on the basis that any constitutional violation was not clearly established at the time of the challenged conduct.

Factually, Skinner was the chief of police and was not directly involved with the events surrounding the arrest or use of force against any Plaintiff. During the relevant times, Skinner remained at police headquarters and assisted the incident commander. He did not directly order any of the arrests or uses of force in this case.

Plaintiffs point to *Balletine v. Tucker*, 28 F.4th 54 (9th Cir. 2022) and *Sanderlin v. Dwyer*, 116 F.4th 905 (9th Cir. 2024) to support their argument that the rights in question were clearly established.[2]

In *Ballentine*, the plaintiffs were part of a Las Vegas organization critical of the police and they wrote messages critical of the police in sidewalk chalk on public sidewalks. *Ballentine*, 28 F.4th at 59-60. The plaintiffs were cited for doing so and the defendant, a detective, was assigned to investigate them. The detective investigated the plaintiffs and made detailed notes of their anti-police statements before seeking arrest warrants for them. *Id.* In Las Vegas it was "extremely rare" for a person to be cited for chalking sidewalks, let alone for the police to seek to arrest a person for doing so. *Id.* at 63. Ordinarily, a plaintiff must plead and prove the absence of probable cause, but in *Nieves v. Bartlett*, 587 U.S. 391 (2019), the Supreme Court carved out a narrow exception for cases where "officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406. The Ninth Circuit found that, consistent with *Nieves*, a reasonable jury could find that the anti-police content of the *Ballentine* plaintiffs' speech was a substantial or motivating factor in the detective's decision to seek arrest warrants for them. *Ballentine*, 28 F.4th at 63. The Ninth Circuit found that, although *Neives* post-dated

[2] Qualified immunity requires that the right be clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Defendants object that both *Ballentine* and *Sanderlin* post-date the events of the case and so cannot clearly establish rights at the time. Although *Ballentine* was issued in 2022, it considered the state of the law and what was "clearly established" in 2013 and so it is not excluded from consideration merely because the decision itself post-dates the events of the present case. Likewise, *Sanderlin* was issued in 2024, but concerned events roughly contemporaneous with the events of the present case and determined what was and was not clearly established law in May 2020.

the events of the case, binding Ninth Circuit caselaw established that "it would be unlawful to arrest Plaintiffs in retaliation for their First Amendment activity, notwithstanding the existence of probable cause." *Id.* at 65.

In *Sanderlin*, the plaintiff was, like Plaintiffs in the present case, involved in protests following the killing of George Floyd by police in Minneapolis. *Sanderlin*, 116 F.4th at 908. The *Sanderlin* plaintiff was standing in the street holding a sign over his head when the defendant police officer shot him in the groin with a 40mm impact munition. *Id.* The plaintiff brought a claim for First Amendment retaliation. The Ninth Circuit concluded that, taking the facts in the light most favorable to plaintiff, "[i]f a factfinder concludes there was no legitimate justification for [the officer's] actions, they could reasonable infer that those actions were motivated by a retaliatory animus." *Id.* at 911. The Ninth Circuit also found that, as of May 2020, it was "clearly established that police officers may not use their authority to retaliate against individuals for protected speech." *Id.*

The most obvious distinction between the present case and both *Sanderlin* and *Ballentine* is that in both cases the defendant was the officer who actually took direct action against the plaintiffs, in *Ballentine* by investigating them and issuing declarations of arrest, and in *Sanderlin* by shooting the plaintiff with an impact munition. Here, by contrast, Plaintiffs have not brought their First Amendment retaliation claim against the individual officers directly involved. Skinner himself was far from the action and, at the time, unaware of the specifics of any Plaintiff's situation. There is no evidence that Skinner was aware of any of the Plaintiffs, or

that he directed the arrests of those who were arrested, or that he directed the uses of force involved.

Defendants point to another recent case, *Cheairs v. City of Seattle*, 145 F.4th 1233 (9th Cir. 2025), as more analogous. Like *Sanderson*, *Cheairs* involved the 2020 protests stemming from the killing of George Floyd. In *Cheairs*, the plaintiff was not personally involved in the protests, but he was filming the conflict between protestors and Seattle police. 145 F.4th at 1238. The defendant officer, whose view of the crowd was obstructed, threw a "blast ball" overhand into the area between the police and protestors. *Id.* at 1238, 1242. The blast ball rolled and bounced before exploding and injuring the plaintiff. *Id.* at 1238. The Ninth Circuit observed that the defendant officer was not even aware of the plaintiff's presence at the protest and so could not have formed a retaliatory animus against him. *Id.* at 1246. This distinguished the facts of *Cheairs* from *Sanderlin*, in which the officer had unquestionably deliberately targeted the plaintiff specifically with an impact munition. *Id.* The Ninth Circuit also contrasted the facts of *Cheairs* with those of *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020), where there was "exceptionally strong evidence" that the defendant officials had deliberately targeted members of the press. *Cheairs*, 145 F.4th at 1246-47 (internal quotation marks and citation omitted).

In this case, Skinner's connection to the individual Plaintiffs is even more attenuated than that of the defendant officer in *Cheairs*. In *Cheairs*, the officer was present at the scene and directly applied force to the plaintiff but was not specifically aware of the plaintiff and could not see him. Here, Skinner was not present, did not

know Plaintiffs, and, as noted, issued no orders specifically concerning the arrest or use of force against any Plaintiff.

The Court concludes that it would not have been clear to a reasonable official in Skinner's position that the decision to expand the temporary curfew and to issue generalized orders to enforce the curfew would give rise to a claim for First Amendment retaliation from individuals the official was not aware of. Skinner is therefore entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, Defendant Chief Chris Skinner's Motion for Summary Judgment, ECF No. 222, is GRANTED. Defendant Skinner is entitled to qualified immunity on the enforcement portion of Plaintiffs' First Amendment retaliation claim.

It is so ORDERED and DATED this 14th day of September 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge